UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA ANN PRICE,<br><br>Plaintiff,<br><br>v.<br><br>BLUE AND GOLD FLEET,<br><br>Defendant. | Case No. 18-cv-02793-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 58 |

Pending before the Court is Defendant Blue and Gold Fleet's motion for summary judgment. Dkt. No. 58 ("Mot."). The Court held a hearing on Defendant's motion on August 1, 2019. Dkt. No. 67. For the following reasons, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND

Pro se Plaintiff Barbara Ann Price, an African-American woman over forty years old, filed this employment discrimination action against Defendant Blue and Gold Fleet ("Blue & Gold") on May 11, 2018, alleging that Blue & Gold unlawfully discriminated against her on the basis of race, gender, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. Dkt. No. 1 ("Compl."). Blue & Gold is a passenger ferry company that provides service around the San Francisco Bay. Dkt. No. 58-2, Declaration of Chris Robbins ("Robbins Decl.") ¶ 2. Its two main competitors are Red and White Fleet and Golden Gate Ferry. *See* Dkt. No. 58-1, Ex. 2,[1] Deposition of Barbara Price ("Price Dep.") at 131:12–19. The Inlandboatmen's Union of the Pacific ("IBU") is the union organization that dispatches deckhand jobs for the three ferry companies, meaning assignments for union members go through IBU. *Id*. at 133:14–134:1.

---

[1] All numbered exhibits referenced herein are attached to the Declaration of Robin Deveaux, Dkt. No. 58-1, and all lettered exhibits are attached to the Declaration of Barbara Price, Dkt. No. 65.

Applicants must go through training hosted by IBU to become a "casual deckhand," or a "D card" deckhand, which is an apprentice deckhand that is on call and is not a permanent employee with any of the ferry companies. *Id*. at 122:23–123:5, 131:1–11. In or around March 2014, Ms. Price participated in the training but did not pass the certification test. *Id*. at 117:2–119:17, 141:3–14. She participated again the next year and passed the second time. *Id*. at 145:16–146:7. Ms. Price recalls that the training emphasized safety as the number one priority on the job. *Id*. at 127:2–17, 145:16–23. An employee who saw anything that would be considered unsafe was required to report it to the captain or lead deckhand. *Id*. After Ms. Price passed her certification test, she was able to work as a casual deckhand for all three ferry companies. *See id*. at 146:1–7.

In order to qualify for additional training needed to work as a deckhand for all Blue & Gold ferry routes (a "C card" deckhand), IBU procedures require deckhands to first accrue 200 hours working on Blue and Gold vessels. *Id*. at 291:7–25. When Ms. Price requested this additional training, she had accrued less than 200 hours with Blue & Gold, although she had a combined total, when including hours with the other two ferry companies, of over 600 hours. *Id*. An IBU representative informed Ms. Price that per its contract agreement with Blue & Gold, she would not be able to receive the additional training. *Id*. at 294:4–295:7. Ms. Price alleges that even though she "had met the 200 required deckhand hours," she was denied training because of her age, as individuals younger than her received the additional training. Compl. ¶¶ 10–11 ("Several young women and men who have recently completed IBU training have been qualified for all of Blue and Gold Fleet shifts immediately after reaching 200 hours.").

On July 9, 2016, IBU assigned Ms. Price a job with Blue & Gold. Dkt. No. 58-3, Declaration of John Stilz ("Stilz Decl.") ¶ 3; Dkt. No. 65, Declaration of Barbara Price ("Price Decl.") ¶ 2. Blue & Gold had requested a casual deckhand because it was a busy weekend and the crew was short a deckhand that day. Stilz Decl. ¶ 3. Captain John Stilz was captain of the boat and was supervising Ms. Price. *Id*. According to Ms. Price, the Captain did not like her and only spoke to her once at the end of her shift when he made a "mean comment" that the trash bag she was carrying was leaking. Price Dep. at 91:3–92:18. Captain Stilz represents that he was "alarmed" by Ms. Price's performance, as he observed her being "unsteady on her feet on the boat

2

and on the dock" and did not believe she possessed the skills and awareness necessary to perform her job safely. Stilz Decl. ¶ 4.

Captain Stilz subsequently filed a "Marine Personnel Action Notice" for Ms. Price and stated he thought her unqualified for the job. Dkt. No. 58-1, Ex. 8. He wrote that Ms. Price had "no line handling skills that [he] could see," was "unable to operate ramp holdowns [sic]," and could not climb down the "knee [ladder] [ ] without help from" Sharon Edwards, the lead deckhand. *Id*. Captain Stilz noted that he had conferred with Ms. Edwards and she agreed with his assessment of Ms. Price. *Id.* Therefore, he recommended that Ms. Price be deemed not eligible for dispatch. *Id*. Ms. Price claims that she was not notified of her personnel action notice until July 29, 2016. Price Dep. at 222:12–22. She then requested a meeting with Blue & Gold's human resources manager. Robbins Decl. ¶ 13. The meeting took place on January 4, 2017, with Ms. Price, IBU representatives Marina Secchitano and Ben Weber, and Blue & Gold's human resources manager Chris Robbins. *Id*. ¶ 14. At the meeting, Mr. Robbins "continuously stressed that his concern was safety" and also told Ms. Price she "needed more experience and confiden[ce]." Dkt. No. 58-1, Ex. 10 (Ms. Price's contemporaneous notes from the meeting).

Ms. Price filed a formal charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Blue & Gold discriminated against her on the basis of race, gender, and age. *See* Dkt. No. 58-1, Ex. 4. The EEOC dismissed the charge on February 12, 2018, stating that it was unable to conclude that Blue & Gold violated the applicable statutes, but clarified that its finding did not certify Blue & Gold "is in compliance with the statutes." Compl., Dismissal and Notice of Rights.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

3

the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. DISCUSSION

Ms. Price claims that Blue & Gold discriminated against her because of her age, gender, and race, by denying her training that would qualify her for more job responsibilities, and by deeming her unfit for duty and ineligible for dispatch. *See generally* Compl. Blue & Gold argues that Ms. Price has not produced any evidence to sustain a prima facie case of discrimination. Mot. at 10–17. And even if she has, Blue & Gold contends that it has articulated a legitimate, nondiscriminatory reason for its actions, which Ms. Price has not shown was pretextual. *Id*. at 17–18.

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff "has the burden of establishing a prima facie case by showing that (1) [she] is a member of a protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). If the plaintiff can prove a prima facie case of discrimination, then the burden of production shifts to the employer to articulate "some legitimate, nondiscriminatory reason" for the employer's adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is successful, it is on the plaintiff to demonstrate that there is a genuine dispute of material fact as to whether the purported reason is pretext for discrimination. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012).[2]

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). However,

---

[2] The Ninth Circuit has held that, although the burden of proof at trial is different in ADEA and Title VII claims, the *McDonnell Douglas* burden-shifting test is the appropriate framework at the summary judgment stage for ADEA claims. *Shelley*, 666 F.3d at 608 (9th Cir. 2012) (citing sister circuit cases and finding that "[t]he *McDonnell Douglas* test is used on summary judgment [for ADEA cases], not at trial").

5

"purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988).

### A. Prima Facie Case of Discrimination

Ms. Price alleges that she has established a prima facie case of discrimination because of her membership in the protected classes. Dkt. No. 65-1 ("Opp.") at 5. Blue & Gold does not dispute that she is a member of the protected classes, but contends that this is insufficient evidence to establish a prima facie case of discrimination.[3] Mot. at 10–17 and n.9.

The Court finds that even viewing the evidence in the light most favorable to Ms. Price, she has failed to make out a prima facie case of age, sex, or gender discrimination. Ms. Price appears to proffer the following as evidence of discrimination: (1) her membership in a protected class, Price Dep. at 77:13–78:6; (2) the unidentified "number of black females that work" at Blue & Gold, *id*. at 43:20–44:10; (3) the fact that Captain Stilz and Mr. Robbins are white, *id*.; (4) Ms. Price's "instinct" and "feeling," *id*. at 46:12–22; and (5) Captain Stilz's general demeanor, which Ms. Price described as "rude," *id*. Ms. Price, in her opposition, also argues that there is data, which she does not produce, allegedly establishing a disproportionate number of those in her race, gender, or age being deemed ineligible for dispatch. Opp. at 6. She also claims that she does "not know of anyone who has been treated the way [she has] with the exception of another African American female," who allegedly "called [her] and informed [Ms. Price] that she was not coming back." Opp. at 11.

The proffered evidence falls well short of even the "very little evidence" required to overcome Blue & Gold's motion. *See Chuang*, 225 F.3d at 1124. Ms. Price's "instinct" and the fact that she is a member of protected classes do not provide any "relevant particulars" that

---

[3] Blue & Gold does not dispute that deeming Ms. Price ineligible for employment is an adverse employment action. Mot. at 12 n.9. However, it disputes whether denial of training qualifies as adverse employment action. *Id*. The Court agrees that Ms. Price has failed to meet her burden of showing a genuine triable issue as to whether denial of training in this case was an adverse employment action. The undisputed facts show that Blue & Gold was not aware of Ms. Price's desire to have additional training, and that Ms. Price did not have the required 200 hours of service on Blue & Gold vessels to qualify for training in the first place. *See* Price Dep. at 242:6–243:16, 291:7–25, 294:4–295:7.

6

support an inference of discrimination. *See Forsberg*, 840 F.2d at 1419; *see also Tukay v. United Airlines, Inc.*, No. 14-CV-04343-JST, 2016 WL 215920, at *3 (N.D. Cal. Jan. 19, 2016), *aff'd*, 708 F. App'x 922 (9th Cir. 2018) (conclusory allegations that a plaintiff was part of a protected class without evidence of a link to the adverse employment action is not sufficient). As to her "data," Ms. Price does not sufficiently articulate how it demonstrates that other similarly situated employees outside her protected classes were treated more favorably than she was, as it also purportedly shows that people not in her protected classes were also deemed ineligible for dispatch.[4] More fundamentally, Ms. Price does not produce evidence that this data actually exists or establish where she received the data from. *See* Opp. at 6 (Ms. Price, in an apparent contradiction, maintains that she was "unable to complete statistical data based on the number of individuals hired, their gender, and age, because [she] was unable to secure this data from [Blue & Gold]"). There is no evidence in the record regarding what factors and contextual characteristics were considered, and no evidence to establish (or even suggest) that those deckhands not deemed ineligible were "similarly situated." *See Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) ("It is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be 'similarly situated ... in all material respects.' … Employees are similarly situated if they have 'similar jobs and display similar conduct.'" (citation omitted)).

Accordingly, the Court finds that Ms. Price has presented no evidence that Blue & Gold discriminated against her based on her sex, age, or gender.

### B. Legitimate, Nondiscriminatory Reason

Even if Ms. Price were able to make out a prima facie case of discrimination, Blue & Gold has satisfied its burden of showing that there was a legitimate, nondiscriminatory reason for deeming Ms. Price ineligible for dispatch. Captain Stilz said he believed Ms. Price posed a "grave safety risk" to herself and others around her and provided specific reasons for his conclusion:

---

[4] According to Ms. Price, of the twenty-one individuals who were ineligible for dispatch between 2015 and 2018, twelve were African-American and six were white. Opp. at 6. Of the twelve African-American individuals, two were women over forty and seven were men were over forty. *Id*. Of the six white individuals, one was a woman over the age of forty. *Id*.

7

based on his observations, corroborated by Ms. Edwards and other crewmembers, Ms. Price had no "line handling skills," lacked the awareness necessary to "safely judge when and how to handle the lines securing the boat to the dock," could not operate "the ramp hold downs, as she was unable to safely re-hook ramps to the boat without dropping them," and had "difficulty following instructions." Stilz Decl. ¶¶ 4–6; *see also* Dkt. No. 58-1, Ex. 8. This essentially unrebutted evidence amply establishes a legitimate, nondiscriminatory basis for the challenged action.

### C. Pretext

Because Blue & Gold articulated a legitimate, nondiscriminatory reason for deeming Ms. Price ineligible for dispatch, even if Ms. Price had been able to make a prima facie showing of discrimination, the burden would shift back to her to demonstrate that there is a genuine triable issue as to whether that reason was pretext for discrimination. *Shelley*, 666 F.3d at 608. A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang*, 225 F.3d at 1124.

Ms. Price does not offer any evidence, direct or indirect, that raises a dispute as to whether Blue & Gold's purported nondiscriminatory reason was pretextual. As noted above, Ms. Price has presented no direct evidence suggesting a discriminatory motive. With respect to indirect evidence, she does not contest that she could not successfully perform the tasks (*e.g.* operating the ramp hold downs), but instead states her disagreement with Captain Stilz and Mr. Robbins' characterization of her performance and attacks their credibility. Opp. at 13–17. Further, according to Ms. Price, if she truly were unable to safely perform her job, it would have been "business necessity to have [her] removed immediately [from the vessel] and replaced," suggesting that because Blue & Gold did not immediately remove her, its nondiscriminatory reason was pretext. Price Decl. ¶ 8.

On its own, that Ms. Price does not agree with the Captain's assessment of her job performance is insufficient to show pretext. *See Weil*, 922 F.3d at 1003 ("An employee's self-assessment of [her] performance, though relevant, is not enough on its own to raise a genuine issue of material fact."). Ms. Price presents no evidence showing satisfactory performance, on this

8

particular job or any other job with any of the three ferry companies.  In contrast, Blue & Gold presents substantial evidence showing what appears to be a history of performance issues with Ms. Price.  *See* Price Dep. at 177:9–20 (Ms. Price acknowledging that "according to the writeup," all three ferry companies have designated her as ineligible for dispatch due to safety concerns).  She admits that she has "not worked [many] deckhand jobs" and is still "learning the jobs."  Dkt. No. 58-1, Ex. 9.  Equally unavailing are her attacks on the credibility of Captain Stilz and Mr. Robbins, as Ms. Price presents no evidence that they did not truly believe their judgment that she posed a safety hazard.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("In judging whether [an employer's] proffered justifications were 'false,' it is not important whether they were *objectively* false," as courts only require that an employer "honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" (citation omitted)).  Finally, her assertion that Captain Stilz should have removed her from the vessel if he sincerely believed her actions would compromise the safety of the passengers is unpersuasive, in light of Blue & Gold's explanation that it was required, by regulation, to have a certain number of deckhands on board.  *See* Dkt. No. 65, Ex. E at 3–4.  It would not have been reasonable, nor would it have been practical, to ask Ms. Price to leave immediately.  In summary, nothing in the record shows any genuine dispute as to whether the stated performance-based reason for Ms. Price's ineligibility was pretextual.

## IV. CONCLUSION

Based on the evidence presented, Ms. Price has failed to raise a material issue of fact connecting any adverse employment action taken against her to race, sex, or age discrimination.  Accordingly, the Court **GRANTS** Blue & Gold's motion for summary judgment.  The Court directs the Clerk to enter judgment in Defendant's favor and close the case.

**IT IS SO ORDERED.**

Dated: 8/7/2019

*[signature: Haywood S. Gilliam, Jr.]*
HAYWOOD S. GILLIAM, JR.
United States District Judge

9